Edwards, Ch. J.
delivered the following opinion of the court: — The question to be decided in this cause, grew out of a report of commissioners, appointed in a case where both parties claimed under the same derivation of title, The report on which the decree is founded, bears date on the 26th of February 1863.
The dispute commenced by ejectment; the notice to the tenants jn possession, bears date on the 13th July 1799 ; when it was served, does not appear. The ejectment was returned into the Lexington district court, at the Marcliternq 1799. The commissioners commenced the charge of rents against the appellees, (who were the occupants) long, before the date of the notice in ejectment. They allowed five years use and occupation to the appellees, fpr improvements, by clearing, &c. They charged them with the residue of their occupancy, amounting to 294/. 6s. They charged the appellants with other improvements made by the occupants, amounting to 231/. 13s. 6d. and reported the value of the land, as improved, to be worth 4/. per aeree ; and, as wood-land, that it was worth 3/. 12s. Upon this report, the court gave (he following opinion and decree: — ■“ That nothing *598 ought to be allowed to the defendants for the rent ofthi® ^anc^ in dispute, prior to the service of the ejectment ; and that five years, rent, from that time, ought to be allowed for clearing the land:; and that the defendants, ought to Pay the amount of the improvements; and, therefore, do adjudge, order and decree, that the defén-[⅛⅛ ,j0 pay ⅛ the complainants, the sum of 231/, 13⅜ from which the said de-6</. and the costs of this suit: fendants appealed.
Rules to he ebferv=u m for-snate. "
The appellants,have assigned,for error“ First- — The court erred m allowing five years, from the time the ejectment was served, to the appellees, for clearing the land, &c. when the commissioners had already made an allowance for improving.” “ Second — -The court erred in the criterion which they adopted for compensating the appellees for the improvements. The land, in its native state, is worth 3/. 12s.; in its improved state 4/. ; the difference is all the appellees are entitled to,; that being the value confered by the labor upon the subject. There are 350 acres of land, for improving which, the appellees ought to have been allowed 140/. only, whereas they have been allowed 231/. 13s. 6d.K
This case is not within the provision of the statute respecting occupying claimants (a). Yet, as the appel-lees were not fraudulent possessors, but occupied under such colourable appearance of right, as to entitle them to. have equity, it must be inquired what that equity is.
Two questions are involved- — 1st, Whether a bona, fide possessor shall be charged with rents and profits, before notice of the adverse right ? 2dly, Whether he shall be allowed for improvements and ameliorations, considering them as the sources of comfort, utility and profit to the agriculturist, or as confering an enhanced price on the tract of land, as an article for sale ?
Neither law nor equity will favor one who negligently or fraudulently lies by, and permits another to occupy the land, without giving notice of his right. Nor will an assumpsit be implied, to charge an occupant^believing in good faith, the land to be his own, until such occupant has notice of the adverse claim.
If the right owner did not know of his claim, and the occupant has not concealed the title papers, or otherwise been the guilty accessory to such ignorance, there is no foundation for charge against the occupant before no *599 tice. The owner has not been injured, and his o«a fault, or laches, ought not to make the bona fide posses* sor, a trespasser, bailiff, receiver, or steward, against his will.
But if die owner knew his title, and yet neglected to undeceive the occupant; he must be considered as assenting to the occupancy ; and then the maxim well applies, that “ volenti non fit injuria.”
At law, the entry ol the person who has title to tb? possession of lands ; and in chancery, notice of such title to the occupant, seem to be the points at which die charge for rents and profits is to commence. This is the general rule, liable, however, to exceptions from particular- circumstances — Eq. Ca. Ab. Vol. 2, part 2, title Mesne Profits, 588 — 2 Vern. 724 — 1 Atk. 524 to 526 — 2 Atk. 83 — Dormer vs. Fortescue, 2 Atk. 283, and 3 Atk. 130 to 134 — Same 340 — Townshend vs. Ash & ux. Pr. Wms. 645-6 — Bennet vs. Whitehead, 1 Wash. 339.
The commissioners reported an allowance of five years occupation, as compensation for clearing and improving of the land, independent of the building. There is nothing in the record, to- shew, that in this instance the allowance was unjust. It was not excepted to on either side. The question is, whether the allowance shall commence before notice, as supposed by the commissioners, or after notice, as decreed by the bourt.
Suppose the occupant, upon the first demand, or notice of the defect of his claim, surrenders possession to the right owner ; must he, therefore, lose his labor and money, expended in clearing, although he had not enjoyed the fruits of his expenditures for a day ? Nqt beiqg a tartfeaser, he would be entitled to a compensation for clearing, that being a valuable and lasting improvement, befitting the land to the exercise and enjoyment of the proper and rightful dominion.
But suppose he had enjoyed the land, as his own, for many years ; is he to be charged with the proceeds of his own labor, money, and industry ? And to be made, pro tanto, thtf bailiff and receiver of another, to whom he has done no wrong, and from whom he has withheld eno contemplated exercise of ownership ? The occupant who comes innocently into the possession of an improved estgte, yielding annual rent and .profits, and without- *600 ¿ny expenditure of capital, enjoys the estate many yeari before the right owner makes known hiS claim, shall not account for rents and profits, before notice of the defect in his own claim, or of the adverse right.
Why, then, Shall an occupant, who innocently believing the land his ówn, hás converted, at great expence and labour, a forest íiito a farm, be charged with rents and profits before notice l If, by an unkind, or ungenerous cultivation, or use, he has reduced the soil, committed waste, or done Other injury, over and above the common estovers ; these otight to be charged against him td their full extent! But if he has nourished the soil to preserve the original fertility, and with it, surrenders á Capital, usefully and judiciously bestowed upon, and inseparably connected with the land, it seems that the occupant ought to receive, from the owner of the land, as much as will reimburse that portion of the expenditure which passes to the owner, and makes him so much thé richer. A capital once expended in reducing a forest to tillable, meadow, and pasture land, is as permanently useful, as the land itself. It is not exhausted at the end of five years, or other périod, so as to require the expenditure of a new capital. The forest does not Hse up again, in spite of the farmer, at the end Of that period, which may be supposed to have reimbursed the expehce of clearing. The owner, who receives the cleared land, after many years of cultivation, without reduction of soil, or waste, is as much richer, the cultivation notwithstanding, as if the land had been cleared, and immediately surrendered, without cultivation. But the occupant who is charged before notice, or default on his part, with rent equal to the expence of clearing and improving, will be made poorer by so much as it will cost him to put the same improvement on his own land; Thus, the subsistence of the innocent industrious agri* culturist, would be taken to enrich the drone, who not knowing the land was his, could not have felt the want of it; or if he knew it, and did not ask his right, must be considered as permitting the occupant to remain as tenant at will, rendering no rent.
Upon the second question, no doubt is entertained but that the improvements themselves, made before notice, are to be considered as the measure of the compen-1 sation, and not the increased value of the land. Whim *601 and fancy are not to determine the valúe of improve-inents ; they are to be considered, with reference to their utility and durability, If to these, order, proportion, beauty, and taste, have been added, and united ; without extravagance or caprice ; they also, may deserve some consideration. The question, in all cases of charge for improvements, must be, are the)4 such as in reason, and prudent estimation, are deemed valuable; and what is their value, as sources of comfort, convenience, or profit ? To use the land for habitations, cultivation, and erection of such machineries, and manufac-tories, as are Useful and necessary in society^ is the proper end, and intent, for which ownership is given. Society is interested in the proper exercise of that ownership. Every class of citizens, depend, ultimately, upon the agriculturist for support; and it is with regard to the capacity to yield that support, that the value of land is to be adjudged ; and not as an article of traffic or exchange. Public policy, therefore, demands that agricultural pursuits and improvements, should be encouraged. The particular situation of this country, with respect to titles, more peculiarly demands that improvers should have protection, where they have acted in good faith.
Adventitious circumstances, may raise dr depress the price of land, or the relative estimates of wood-land, and arable fields ; but the capacity of the soil, to reward, with its produce, the labor of the husbandman, and to sustain animal life, remains the samej whether it is near to, or remote from towns, iron-works, or salt-works. Local advantages will vary the price of land, and these advantages change, as wealth, commerce, manufactures and population give the impulse. But in all neighborhoods, the value of improvements, and the price of labor, bear a relative proportion, the one to the other. This is generally understood in the vicinage, and can be resorted to, when occasion shall require. By this standard, the value of improvements ought to be ascertained* and paid for, considering them as attached to the land for use., and not for safe.
Upon this view; of the subject, the court below did right in disregarding the difference between the value of the laud in its improvedapd unimproved condition. Five years subsequent to notice, had not expired. This term, vrasj in this particular instance, estimated by the com *602 missioners, as a just compensation for certain improvements ; they reported the vaiue of others, not so satisfied ; they did not report any deterioration of soil, or that any waste had been committed. And upon the limited view in which the subject was presented to the court below, and to this court, upon the appeal, it seems to us that the decree of that court for 231/. 13s. 6d. with costs, was proper.-Decree affirmed.*

■-(*) 179⅜-7, 143, 1 Biad. a0i’

 ín the cafe of Whitledge vs. Wait's heir, Spring term 1804, Pr. Dec. 397, k fee ms to be laid down as a general rule, chat in cafes not embraced by the occupying claimant law, the proprietor of the better title, is entitled to the irents and profits from the time notice was given of his claim, and mull pay for all valuable and Jailing improvements made previous to evi&ion, deducing therefrom, fir unnecetfary wafte, Sec. But that this rule may have exceptions, fee iywearwgem'vs. Brijcoe, Hughes47.